**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
                                    :
**ALLEN MOORE,**                    :
                                    :
         **Plaintiff,**       :
                                    :   <u>**REPORT AND RECOMMENDATION**</u>
  -against-                    :   **05 CV 2010 (SCR)(MDF)**
                                    :
**GLENN S. GOORD, et al.,**         :
                                    :
       **Defendants.**     :
------------------------------X

**TO:  THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.**

In February 2005, Allen Moore, *pro se* and incarcerated, commenced this action, pursuant to 42 U.S.C. § 1983, alleging that numerous prison officials (1) retaliated against him for filing complaints and grievances in violation of his constitutional rights, (2) conspired to falsely charge him with a Tier III disciplinary violation; (3) violated his due process rights in the Tier III disciplinary proceeding, and (4) subjected him to unsanitary conditions in the Special Housing Unit ("SHU") in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  The prison officials named as defendants (the "Defendants") moved to dismiss Moore's complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, asserting, *inter alia*, that Moore failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  With respect to

Moore's claim that his right to due process was violated during the Tier III disciplinary hearing, the Defendants concede that Moore exhausted his administrative remedies as to this claim. They argue, however, that Moore is collaterally estopped from pursuing this claim because he previously challenged the disciplinary decision in a state court Article 78 proceeding. Defendants also contend that Moore has failed to state any claim upon which relief may be granted.

In response, Moore filed a cross-motion for summary judgment. Because it could not be determined from the face of the complaint whether Moore had exhausted his administrative remedies, this Court converted the Defendants' motion into a motion for summary judgment and gave Moore notice and an opportunity to file a response that complied with Rule 56 of the Federal Rules of Civil Procedure. *See* Memorandum Order dated 2/1/06. Moore's response raised an issue of fact that could not be resolved on the record, specifically, whether officers in the Special Housing Unit ("SHU") removed his grievance appeals from the regular flow of mail. This Court, therefore, held a hearing on the issue on March 29, 2007. Based on a review of the parties' submissions and my findings from the hearing, I recommend that your Honor grant the Defendants' motion and dismiss Moore's complaint.

**BACKGROUND**

In his complaint, Moore, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), names twenty-one prison officials as defendants and asserts the following claims: (1) various corrections officers retaliated against him for filing complaints and grievances in violation of his constitutional rights; (2) the Defendants conspired to falsely charge him with a Tier III disciplinary violation; (3) his right to due process was violated during the course of the Tier III disciplinary proceedings; and (4) the unsanitary conditions in the SHU, where he was confined after being found guilty of assault in the Tier III proceeding, violated his right to be free from cruel and unusual punishment. *See* Compl.  Moore specifically alleges that, "[i]n retaliation for [his] numerous complaints and grievances of 2003 and 2004, Officers R. Wright, Ms. Preece, Sgt. John Conklin and [Sgt.] Patrick Sullivan conspired to concoct false charges to deprive him of a fair hearing[] and to subject him to disciplinary action on May 2, 2004." *Id*. at 3.  He also claims that defendants Panko, Pelc, Nash, Paratore, Blake, Lenczewski, and Stephens were involved in the fabrication of the facts that formed the basis of the Tier III misbehavior report. *See id*. at 5, 6.  Moore further alleges that another incident of retaliatory conduct took place in July 2003, after he had made complaints and filed grievances about the

harassment of certain officers. *See id*. at 6.  He claims that defendants DiGaralamo, Sablinski, Walsh, and Fitzpatrick "used" defendant Daye-Ramos to fabricate a July 29, 2003 misbehavior report, which resulted in him being confined to the SHU.  *See id*. Moore further states that defendants Goord, Leclaire, Mazzuca, and Ercole were aware of the harassment and retaliatory conduct but took no action to stop it.  *See id*. at 4.  In support of his second claim, Moore argues that he was denied his right to due process when defendant Valles "refused to give him proper assistance" in the Tier III disciplinary proceedings and when defendant Pelc, who had been involved in the investigation leading up to the proceedings, acted as the hearing officer.  *See id*. at 7.  Finally, Moore does not specifically name the defendants that he claims are responsible for the unsanitary conditions in the SHU, nor does he indicate at which correctional facility he was subjected to such conditions.  During the time at issue, Moore was housed at Fishkill Correctional Facility ("Fishkill") and then at Cayuga Correctional Facility ("Cayuga").

Attached to his complaint, Moore included letters, dated July 8 and 9, 2003, to defendant Deputy Superintendent Robert Ercole and defendant Commissioner Glenn Goord complaining that defendant Corrections Officers Blake, Preece, and Paratore had been harassing him by failing to leave contraband receipts after searching his cube, blacking-out his name on the sign-in board

4

for the yard, continually questioning him when he out sick for a week from his job at the commissary, and throwing out a bag of his personal items.  *See id*. at attached letters dated 7/8/03 and 7/9/03.  He also attached a letter that he had written to the Honorable Jack B. Weinstein of the Eastern District of New York, seeking an injunction against the harassing officers.  *See id*. at attached letter to Judge Weinstein dated 7/8/03.

In their motion to dismiss, the Defendants argue, *inter alia*, that Moore failed to exhaust his administrative remedies. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss at 7-13.  In support of their defense, the Defendants have submitted an affidavit from the Director of the Inmate Grievance Program ("IGP") for DOCS stating that a search of DOCS records reveals that Moore did not appeal any grievances related to the issues raised in his complaint to the Central Office Review Committee ("CORC").  *See* Eagen Decl. (attached to Decl. of Jeb Harben).

Along with their motion, the Defendants have submitted numerous documents which reveal the following facts.  On July 9 and 16, 2003, Moore filed two grievances.  *See id*. at Exs. E and F.  In the first grievance, Moore alleged that Paratore had taken a small bag full of his personal items in retaliation for making previous complaints about Paratore's harassing conduct.  *See id*. at Ex. E.  On July 30, 2003, the Inmate Grievance Resolution

Committee ("IGRC") denied Moore's grievance. *See id*.  Moore did not appeal this decision.  In the second grievance, Moore alleged that, when he was placed "in the box" on July 9, 2003, he was not provided with certain items of his personal property and that this property was missing. *See id*. at Ex. F.  He asked that the location of the property be ascertained and that the items be returned to him. *See id*.  Moore did not name any prison officials in this grievance.  The IGRC accepted the action requested by Moore "to the extent[] that Lt. Pataro (inmate claims office) is in receipt of a claim by grievant which is currently being investigated." *Id*.  Moore took no further action with respect to this complaint.

While in the SHU, Moore filed another grievance on or about July 20, 2003, alleging that, on July 19, 2003, an unnamed corrections officer refused to open the storm windows in his cell, despite the high temperatures. *See id*. at Ex. G.  Moore asked "[t]hat the officers on 6:30 a.m. to 2:30 p.m. shift be admonished to follow [p]olicy [and] [p]rocedure and obey their own [r]ules." *Id*.

In May 2004, Tier III disciplinary proceedings were commenced against Moore. *See id*. at Ex. C (Answer and Return at Ex. 1).  The Inmate Misbehavior Report, completed and signed by defendants Corrections Officer Wright and Sergeant Conklin, charged Moore with conspiring with two other inmates to threaten

6

and assault another inmate.  *See id*.  To aid Moore throughout the proceedings, defendant Valles was assigned as his assistant.  *See id*. at Ex. J.  A hearing was held on May 7, 2004 and May 14, 2004, over which defendant Pelc presided.  *See id*. at Ex. K.  At the conclusion of the hearing, Pelc rendered a decision finding Moore guilty on the assault charge and not guilty on the threat charge.  *See id*. at Ex. L.  Moore was penalized with six months confinement in the SHU with loss of packages, commissary, and phones to begin on May 2, 2004 and end on November 2, 2004.  *See id*.  According to Moore's complaint, he was transferred to Cayuga in June 2004 and served the remainder of his term of confinement in the SHU.  *See* Compl.

Moore subsequently submitted a request for discretionary review to the Superintendent of Fishkill, defendant Mazzuca, who concurred with the hearing officer's findings and disposition. *See id*.  Moore then filed an appeal with Commissioner Goord, who also affirmed the hearing officer's decision.  *See* Decl. of Jeb Harben at Ex. L.

On May 14, 2004, while these appeals were pending, Moore filed a grievance alleging that the Tier III misbehavior report was fabricated by Corrections Officer Wright and endorsed by Captain Conklin.  *See id*. at Ex. H.  He further asserted that defendants Patrick, Sullivan, Panko, and Pelc were involved in the investigation.  *See id*.  Moore requested that the matter be

investigated.  *See id.*  The IGRC denied Moore's request, finding
that the action requested was "beyond the purview of the
I.G.R.C." and that the issue would be better addressed through a
disciplinary appeal.  *Id.*

In August 2004, Moore commenced an Article 78 proceeding in
New York State supreme court seeking to vacate the Commissioner's
decision affirming the disposition and penalties imposed in the
Tier III disciplinary proceedings.  *See id.* at Ex. B.  In his
petition, Moore asserted numerous due process violations.  *See
id.*  In December 2004, the supreme court dismissed Moore's
petition.  *See id.* at Ex. D.  Moore did not appeal this decision.

In response to the Defendants' assertion in this motion of
non-exhaustion, Moore, citing the Second Circuit's decision in
*Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), contends that his
efforts in pursuing his claims through the disciplinary process
should have sufficed to exhaust his claims.  *See* Affirmation in
Opposition to Summary Judgment at 11.  He argues that New York
State prison regulations, specifically 7 N.Y.C.R.R.
§ 701.3(e)(1), and DOCS Directive 4040, which states that
disciplinary decisions are non-grievable, prevented him from
filing a grievance to redress the harm caused by the defendants.
*See id.*; Answer and Cross-Motion for Summary Judgment.  In the
response he submitted after this Court converted the Defendants'
motion to dismiss into a motion for summary judgment, Moore, for

the first time, asserts that "a lot of his outgoing mail and law library request forms were trashed and never reached their destination." Affirmation in Opposition to Summary Judgment at ¶ 8. He states,

> Contrary to what the defendants said, attempts were made to appeal the decisions of some of the grievances while Petitioner was in SHU and he was denied access to the courts by the officers harassing him in the [SHU]. Mail is picked up in segregation at 6:30 a.m. and prisoners have to depend solely on the officers to take the mail to the appropriate area.

*Id.*

At the March 2007 hearing, Michelle Stone, the Inmate Grievance Program supervisor at Fishkill, testified for the Defendants. *See* Transcript of March 29, 2007 Hearing ("Trans.") at 6-21. During her testimony, Stone examined the four grievances filed by Moore in July 2003 and May 2004 and testified that there was no indication in any of the inmate grievance records she reviewed prior to the hearing that Moore had appealed any of these grievances to the facility superintendent or the Central Office Review Committee ("CORC"). *See id.* at 14. She further testified that, according to the records she reviewed, Moore made no complaints about having problems sending legal mail in July or August of 2003 or May or June of 2004 or about SHU officers tampering with his outgoing grievances or appeals. *See id.* at 14, 18. Stone also stated that Plaintiff never made any inquiries to her office about the status of any appeals to the

9

superintendent or the CORC.  *See id*. at 15.

Sergeant Edward Kiefer, the IGRC Sergeant at Fishkill from April 2003 to September 2003, also testified for the defense. *See id*. at 21-34.  Kiefer testified that, during this time, he had a discussion with Moore concerning the air quality in his cell and ventilation problems.  *See id*. at 28.  He stated that Moore never discussed with him problems with submitting grievances or appeals, nor did Moore complain that officers were tampering with or intercepting grievances and appeals that he had attempted to submit.  *See id*. At 28-29.  Kiefer also indicated that Moore never asked him about the status of any grievance appeals that he had submitted.  *See id*. at 29.

Moore testified that, when he was placed in the SHU, he "was an enemy to all the officers for the complaints that [he] had filed" and that "this could lead to what happened with the mail." *Id*. at 36.  He explained that the reason he did not file any appeals after having received no responses to his other appeals was because he did not realize that he had never received a response until he was transferred from Fishkill to Cayuga.  *See id*.  On cross-examination, when asked which of the three grievances filed in July 2003 he appealed, Moore replied, "I don't recall."  *Id*. at 38.  He then stated that he "would" have appealed the denials of his grievances to the superintendent, but did not recall if he ever received a decision from the

10

superintendent. *Id*. at 39. Defense counsel asked Moore if he recalled filing any appeals with the CORC after not having received any decisions from the superintendent and Moore replied, "I would do that." *Id*. Moore indicated that he did not have any copies of any appeals that he had filed. *See id*. at 39, 47-48. Later in the cross-examination, Moore stated that he was sure that he had appealed all three of his July 2003 grievances. *See id*. at 40. He testified that he did not realize that his appeals had been tampered with by the SHU officers until September 2004, but never made any complaints about the alleged tampering. *See id*. at 41. When defense counsel asked Moore about each specific grievance and whether or not the appeals of these grievances were tampered with by the SHU officers, Moore stated that, while he appealed each of these grievances, only his appeal from the July 20, 2003 grievance was tampered with by the SHU officers. *See id*. at 46-47. Moore was unable to provide the specific dates on which he claims to have mailed his appeals or which SHU officers were on duty on those particular days. *See id*. at 48-49. As for why he never raised the issue of mail tampering with any officials at Fishkill, Moore stated that he did not believe it was worthwhile to do so because he was "on a hit list" at Fishkill for his previous complaints. *See id*. at 53-53.

**ANALYSIS**

I.        **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id*. at 248.  In order for there to be a genuine issue for trial, there must be sufficient evidence in the record to support a jury verdict in the non-moving party's favor. *See id*. at 249.  When making a summary judgment determination, "the court must view the evidence in the record in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

12

In opposing a motion for summary judgment, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Mere conclusory allegations and denials are insufficient to create a genuine issue of fact; rather, the opposing party must set forth "concrete particulars" showing that a trial is necessary. *BellSouth Telecommunications, Inc. v. W.R. Grace & Company-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996)(internal quotations omitted).

## II.     Collateral Estoppel

"Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts must give a prior state court judgment the same preclusive effect that such a judgment would be given in the courts of the state from which the judgment emerged." *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996). In order to determine the preclusive effect that a prior judgment in an Article 78 proceeding has on a matter pending in federal court, the district court must turn to New York law. *See id.* Under New York law, the doctrine of collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the

13

tribunals or causes of action are the same." *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 500, 467 N.E.2d 487, 490, 478 N.Y.S.2d 823, 826 (1984). "It is well-settled that collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to 42 U.S.C. § 1983." *Shell v. Brun*, 362 F.Supp.2d 398, 400 (W.D.N.Y. 2005).

There are two requirements for the application of collateral estoppel to an issue: (1) "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and (2) "there must have been a full and fair opportunity to contest the decision now said to be controlling." *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71, 246 N.E.2d 725, 729, 298 N.Y.S.2d 955, 960 (1969). *See Burgos v. Hopkins,* 14 F.3d 787, 792 (2d Cir. 1994). The party seeking the benefit of collateral estoppel has the burden of showing the identity of the issues, whereas the party contesting its application has the burden of showing he did not have a full and fair opportunity to adjudicate the claims in the prior action. *See Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991).

### A.   **Identity of Issues**

To show an identity of issue, "the issue must have been material to the first action or proceeding and essential to the decision rendered therein . . . and it must be the point actually

14

to be determined in the second action or proceeding such that a
different judgment in the second would destroy or impair rights
or interests established by the first." *Ryan*, 62 N.Y.2d at 500-
01, 467 N.E.2d at 490, 478 N.Y.S.2d at 826 (internal quotation
marks and citations omitted).

In his Article 78 petition, Moore asserted that his right to
due process was violated during the Tier III disciplinary
proceeding.  He raised the following specific allegations: (1)
the assistant provided to him to aid him in preparing his case
failed to interview witnesses as requested and failed to provide
requested documents; (2) the Hearing Officer failed to make an
independent assessment of the confidential informant's
credibility; (3) the Hearing Officer was not fair and impartial
due to his role in the investigation; (4) the misbehavior report
did not comply with DOCS regulations; (5) he was not provided
with a tape of the administrative hearing; and (6) the Hearing
Officer was biased because the victim of the assault was white
and everyone else involved in the incident, including Moore, was
African-American.  *See* Harben Decl. at Ex. B (Petition).  In the
instant complaint, Moore claims that he was denied his right to
due process when defendant Valles "refused to give him proper
assistance" in the Tier III disciplinary proceedings and when
defendant Pelc, who had been involved in the investigation
leading up to the proceedings, acted as the Hearing Officer.  *See*

15

Compl. at 7.  Review of the state court's decision reveals that these two issues were raised, decided, and essential to the decision in the Article 78 proceeding.  *See* Harben Decl. at Ex. D (Decision, Order, and Judgment).  Accordingly, I find that the Defendants have met their burden of demonstrating the identity of issues for the purposes of collateral estoppel.

###   B.   Full and Fair Opportunity to Litigate

In determining whether a party had a full and fair opportunity to litigate a claim in a prior proceeding, a court must consider the following factors: "the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation."  *Ryan*, 62 N.Y.2d at 501, 467 N.E.2d at 491, 478 N.Y.S.2d at 827.  Here, in his opposition papers, Moore simply states that "the bias of the hearing officer deprived him of a full and fair opportunity to litigate his claim."  Affirmation in Opposition to Summary Judgment at ¶ 6.  He cannot point to any facts or evidence to show that there was a procedural deficiency that kept him from presenting his case fully before the state court.  *See Giakoumelos*, 88 F.3d at 60.  In the absence of any evidence beyond his conclusory assertion, Moore has failed to raise a

genuine issue of material fact concerning whether he had a full and fair opportunity to litigate his due process claims in state court.

Moreover, the factors set forth in *Ryan* weigh in favor of finding that Moore had a full and fair opportunity to litigate the due process claims he asserts in the instant lawsuit.  First, with respect to the factor concerning the competence of counsel, the mere fact that Moore proceeded *pro se* in the Article 78 proceeding does not sufficiently establish that he was denied a full and fair opportunity to be heard.  *See Clark v. Dep't of Corr. Svcs.,* 564 F.Supp. 787, 789 (S.D.N.Y. 1983).  Second, the prior action was adjudicated in a formal proceeding in a court of record and Moore's claims that he received inadequate assistance and the Hearing Officer was biased were central to the proceeding, just as they are in this case.  Third, in the Article 78 proceeding, Moore submitted a lengthy petition outlining his claims and had an opportunity to submit evidence in support of these claims.  Additionally, in this action, Moore offers no new evidence and there are no differences in the law applicable to his due process claims.  Finally, further litigation between these parties is not foreseeable.

On this record, the Court should find that Moore had a full and fair opportunity to litigate the factual issues underlying his claims against the Defendants.  The claims were decided

17

adversely to Moore by the state supreme court and the decision on those issues was necessary to the resolution of the case. Accordingly, the doctrine of collateral estoppel bars the relitigation of those same factual issues here.  To allow Moore to pursue these claims in this forum would thwart the purpose and policy behind the doctrine of collateral estoppel.  The equities of this case mandate the determination that Moore is barred from re-litigating his due process claim.

**IV.       Exhaustion**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under § 1983 of this title . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In *Porter v. Nussle*, the Supreme Court made clear that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  534 U.S. 516, 532 (2002). A plaintiff's failure to exhaust administrative remedies is an affirmative defense, *see Jones v. Bock*, __ U.S. __, 127 S. Ct. 910, 921 (2007), and, thus, the Defendants bear the burden of proving non-exhaustion, *see Burnham Lambert Group Inc. v. Galadari*, 777 F.2d 877, 880 (2d Cir. 1985).

In August 2004, the Second Circuit decided a series of cases regarding the PLRA exhaustion requirement.  *See Ortiz v. McBride*,

18

380 F.3d 649 (2d Cir. 2004); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004); *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004); and *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004).  The Court recognized that, "while the PLRA's exhaustion requirement is mandatory, certain caveats apply."  *Giano*, 380 F.3d at 677 (internal quotation marks and citation omitted).  In *Hemphill*, the Court fashioned the following three-part inquiry that district courts must undertake when a prisoner plaintiff seeks to counter a defendant's claim that the prisoner has failed to exhaust his administrative remedies: (1) whether administrative remedies were, in fact, "available" to the prisoner; (2) whether the defendants' own actions inhibiting the prisoner's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense; and (3) if the court finds that administrative remedies were available to the plaintiff and that the defendants are not estopped from asserting failure to exhaust as a defense, whether "special circumstances" exist that justify the inmate's failure to comply with the exhaustion requirements. *See* 380 F.3d at 686.

Here, the Defendants allege that Moore has failed to exhaust his administrative remedies with respect to his claims that prison officials conspired to fabricate a misbehavior report and institute disciplinary proceedings against him in retaliation for

filing prior complaints and subjected him to unsanitary conditions in the SHU.  Through the records and affidavits submitted in connection with their motion and the testimony provided at the March 2007 hearing, the Defendants have met their burden of establishing that Moore did not exhaust his administrative remedies with respect to these three claims.  The Court must now turn to the *Hemphill* inquiry.

With respect to the first prong of *Hemphill*, there is no dispute that administrative remedies were available to Moore. DOCS has a well-established grievance process for inmates in its correctional facilities.  *See* N.Y. Correction Law § 139; Official Compilation of Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R."), Title 7, §§ 701.1 *et seq.*  The procedure for most grievances involves a sequential three-step grievance process.  *See* 7 N.Y.C.R.R. § 701.7.  Pursuant to this process, an inmate must first file a grievance with the grievance clerk for the facility's Ignmate Grievance Program ("IGP") within fourteen calendar days of an alleged incident.  *See id.* at § 701.7(a)(1). Second, within four working days of receiving a written response from the IGRC to the grievance, the inmate may appeal the IGRC's decision to the Superintendent of the facility by filing an appeal with the IGP clerk.  *See id.* at § 701.7(b)(1).  Third, any unfavorable disposition of the superintendent must be appealed to the CORC within four working days of receipt of the

Superintendent's written response. *See id.* at § 701.7(c).  The
regulations provide that, absent any extension of the time
limits, "matters not decided within the time limits may be
appealed to the next step." *Id.* at § 701.8.

In addition to the process set forth in § 701.7, DOCS also
provides for an expedited procedure that inmates may utilize when
making allegations of "employee harassment," which is defined in
the regulations as "[e]mployee misconduct meant to annoy,
intimidate, or harm an inmate." *Id.* at § 701.11(a).  In 2003,
when Moore first filed the grievances at issue here, the
expedited procedure permitted inmates complaining of such
harassment to first report an incident to the employee's
immediate supervisor.  *See id.* at § 701.11(b)(1)(2002).[1]  Like
§ 701.7, the expedited grievance provision states that "[a]ll
allegations of employee misconduct shall be given a grievance
calendar number and recorded in sequence." *Id.* at §
701.11(b)(2).  Thereafter, all documents submitted with the
allegation must be forwarded to the superintendent of the
facility, who must "promptly determine whether the grievance, if

_____

[1]  In 2004, § 701.11(b)(1) was amended to require that, even
when complaining of employee harassment, inmates must utilize the
general procedures for filing a grievance outlined in § 701.7(a).
*See* 7 N.Y.C.R.R. § 701.11(b)(1).   The amended provision,
however, includes a note stating that, in these cases, inmates
*should* report occurrences of employee misconduct to that
employee's immediate supervisor, but that this is not a
prerequisite for filing a grievance with the IGP.  *See id.*

true, would represent a bona fide case of harassment." *Id*. at §
701.11(b)(2).  If such a determination is made, the
superintendent must then initiate an investigation and, within 12
working days of receipt of the grievance, render a decision and
transmit the decision, with reasons stated, to the grievant, the
IGP clerk, and any direct party of interest.  *See id*. at §
701.11(b)(4)-(5).  If the grievant wishes to appeal the
superintendent's decision to the CORC, he must do so within four
working days of receipt of the superintendent's decision.  *See
id*. at § 701.11(b)(7).  Finally, under the expedited procedure,
"[i]f the superintendent fails to respond within the required
time limit, the grievant may appeal his grievance to the CORC."
*Id*. at § 701.11(b)(6).  Here, given the extensive grievance
process available to inmates in the custody of DOCS, it is clear
that administrative remedies were originally available to Moore
as the DOCS regulations provided multiple ways in which an inmate
claiming harassment by corrections officers and other violations
may pursue a grievance.

    With respect to Moore's claim concerning unsanitary
conditions in the SHU, Moore alleges in his complaint that "he
endured far inferior hygenic conditions in SHU than prisoners in
the general population and that he rec[ei]ved inadequate amounts
of soap and cleaning materials, a filthy mattress, and infrequent
changes of clothes."  Compl. at ¶ 3.  The only grievance on

record that remotely relates to a claim concerning conditions in
the SHU is Moore's July 20, 2003 grievance, in which he
complained that SHU officers refused to open the windows.  As set
forth above, the Defendants submitted sufficient evidence to
establish that Moore never appealed this grievance.  *See* Eagen
Decl. at ¶¶ 5-6 (attached to Decl. of Jeb Harben); Trans. at 14;
Decl. of Michelle Stone at ¶ 2.  This evidence also suffices to
establish that Moore never appealed his July 9, 2003 grievance
concerning harassment by certain corrections officers or his May
14, 2004 grievance, in which he alleged that certain prison
officials fabricated the Tier III misbehavior report which led to
disciplinary proceedings in which he was found guilty of the
charges and sentenced to time in the SHU.

In response, Moore has failed to raise a genuine issue of
material fact to support his assertion that he did, in fact,
appeal these grievances.  His testimony at the hearing in this
regard is unsupported and not at all credible.  In his Answer and
Cross-Motion for Summary Judgment, Moore did not assert, as he
now does, that he fully availed himself of inmate grievance
process.  In fact, at least with respect to his retaliation
claim, Moore argued that any appeal of his grievance would have
been futile because disciplinary decisions are non-grievable.
*See* Answer and Cross-Motion for Summary Judgment at 5-6.  At the
hearing before the undersigned, Moore first testified that he

23

could not recall whether or not he appealed his grievances, but then later stated with certainty that he had filed appeals to both the Superintendent and the CORC.  However, other than the two letters to the Superintendent that he attached to his complaint, Moore produced no documentation to show that he ever filed an appeal of any of his grievances.  Neither of the letters attached to his complaint concerned unsanitary conditions in the SHU or problems with ventilation in his cell.  While these letters to the Superintendent related to the alleged harassing behavior of certain corrections officers, Moore cannot produce any evidence to show that he appealed the Superintendent's denial of his complaints or failure to respond to the CORC.  Moore's unsupported claim that he availed himself of each level of administrative remedies is insufficient to raise a genuine issue of material fact.  Accordingly, this Court should conclude that, despite the availability of grievance and appeal mechanisms, to which both Stone and Kiefer testified, Moore never exhausted his appeals of these grievances.

Because administrative remedies were available to Moore and Moore failed to utilize them, the Court must next consider whether the Defendants should be estopped from asserting non-exhaustion as a defense.  While tampering with an inmate's grievances may estop defendants from asserting failure to exhaust as a defense, *see Abney*, 380 F.3d at 667 (noting that "exhaustion

24

may be achieved in situations where prison officials fail to
timely advance the inmate's grievance or otherwise prevent him
from seeking his administrative remedies"), Moore's allegations
that the SHU officers tampered with his mail are not credible.
First, Moore did not make any allegations concerning mail
tampering in either his complaint or his Answer and Cross-Motion
for Summary Judgment.  Instead, Moore raised the issue only after
the Court converted the Defendants' motion to dismiss into a
summary judgment motion and provided Moore with an opportunity to
respond.  Second, there is no evidence in the record that Moore
ever made any complaints about mail tampering either in a formal
grievance or by raising the issue with the grievance officers who
made rounds in the SHU.  Both of the witnesses for the defense
testified at the hearing that Moore never made any such
complaints.  Moore also testified that he made no complaints of
tampering beyond what he has asserted in this lawsuit.  The
testimony of both Stone and Kiefer, however, establish that, if
Moore had believed his grievance appeals were being intercepted
by the SHU officers, he had several opportunities to raise the
issue with inmate grievance personnel.  Finally, the
inconsistency in Moore's testimony concerning whether he filed
any grievance appeals at all further supports a finding that
Moore's allegations of mail tampering are not credible.
Accordingly, Plaintiff has failed to raise a genuine issue of

25

material fact with respect to whether the Defendants should be estopped from raising non-exhaustion as a defense.

The final issue the Court must consider with respect to exhaustion is whether any special circumstances exist which justify Moore's failure to appeal his grievances.  In *Giano*, the Second Circuit held that "there are 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified."  380 F.3d at 676.  What constitutes justification in the PLRA context is "determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way."  *Id*. at 678.  In *Giano*, the "special circumstance" that justified Giano's failure to grieve in the required manner was his reasonable interpretation of the DOCS regulations as they related to whether decisions or dispositions of disciplinary proceedings are grievable.  *See id*. at 678-79.

In his opposition papers, Moore argues that his appeal of the outcome of the Tier III disciplinary proceedings should have sufficed to exhaust his administrative remedies.  New York DOCS regulations provide that "[a]n individual decision or disposition of any current or subsequent program or procedure having a

26

written appeal mechanism which extends review to outside the
facility shall be considered non-grievable." 7 N.Y.C.R.R. §
701.3(e)(1). "Similarly, DOCS Directive 4040 states, *inter alia*,
that '[t]he individual decisions or dispositions of any current
or subsequent program or procedure having a written appeal
mechanism which extends review to outside the facility shall be
considered non-grievable. Specifically, the individual decisions
or dispositions of the following are not grievable: ...
disciplinary proceedings.'" *Giano*, 380 F.3d at 678 (quoting DOCS
Directive 4040). The IGRC reiterated this policy in its decision
on Moore's May 14, 2004 grievance, in which he alleged that
numerous corrections officers fabricated the charges in the
misbehavior report for which he was ultimately found guilty. The
IGRC denied Moore's grievance, stating, "Action requested is
beyond the purview of the I.G.R.C. as per CORC decision
#FCF24666-03, which states in part ' . . . the grievant's
complaint challenges the validity of a misbehavior report and is
best addressed via the disciplinary appeal mechanism.'" Harben
Decl. at Ex. H.

In light of the ambiguity in the DOCS regulations and
Directives and the IGRC's decision on Moore's May 2004 grievance,
Moore's failure to exhaust his administrative remedies with
respect to his retliation and conspiracy claims was "justified by
his reasonable belief that DOCS regulations foreclosed such

recourse." *Giano*, 380 F.3d at 678.  The Court in *Giano* noted that "[s]ection 701.3(e)(1) and Directive 4040 do not differentiate clearly between grievable matters relating to disciplinary proceedings, and non-grievable issues concerning the 'decisions or dispositions' of such proceedings."  *Id.* at 679. Like the plaintiff in *Giano*, Moore raised his concerns regarding retaliatory behavior of the officers and the alleged fabrication of the misbehavior report in his appeal of the disciplinary proceedings.  *See* Harben Decl. at Ex. C (Respondents' Answer to Moore's Article 78 petition and attached exhibits).  The Court held that, although *Giano* could have pursued a separate grievance, "it was reasonable for him to think that direct appeal of his disciplinary conviction was his only available remedy." *Giano*, 380 F.3d at 679.  Similarly, here, because Moore's complaints of retaliation and conspiracy directly relate to his allegation that the officers fabricated the misbehavior report, it was reasonable for him to believe that these complaints were not grievable.

While Moore's reasonable belief that complaints related to disciplinary proceedings are not grievable may serve as a justification for Moore's failure to appeal his grievance alleging that officers conspired to initiate the Tier III disciplinary proceedings against Moore in retaliation for having filed previous complaints, it does not justify Moore's failure to

exhaust his claim regarding the allegedly unsanitary conditions in the SHU.  Unlike Moore's retaliation and conspiracy claims, this claim is wholly unrelated to the Tier III disciplinary proceedings.  There is nothing in the record that could possibly serve as a "special circumstance" to justify Moore's failure to grieve this issue, let alone exhaust his administrative remedies with respect to this claim.  Accordingly, in the absence of any such special circumstances, Moore's claim concerning unsanitary conditions in the SHU should be dismissed for failure to exhaust. Moore's retaliation and conspiracy claims, however, must be considered on the merits.

**V.**        **Conspiracy**

To establish a conspiracy claim under § 1983, a plaintiff "must prove that defendants acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated [his] rights, privileges, or immunities secured by the Constitution or federal courts."  *Hameed v. Pundt*, 964 F.Supp. 836, 839 (S.D.N.Y. 1997)(internal quotation marks and citations omitted)(alteration in original).  "[C]omplaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977).

Here, Moore has failed to establish that the Defendants entered into a conspiracy to retaliate against him for filing

29

prior grievances in violation of his constitutional rights.  He
has offered no evidence to show that the Defendants came to a
meeting of the minds to fabricate the Tier III misbehavior report
and initiate disciplinary proceedings against him.  Instead,
Moore offers only his unsupported and conclusory allegations in
his affidavit.  Without pointing to any supporting evidence,
Moore alleges that the Defendants "all knew that the Plaintiff
was not involved with the inmate assault that was fabricated
because of the numerous complaints and grievances he had written
prior to the incidents."  Affirmation in Opposition to Summary
Judgment at ¶ 9.  Conclusory allegations such as this are not
sufficient to support a claim of conspiracy under § 1983.
Accordingly, Moore's complaint fails to state a claim of
conspiracy and he has failed to raise a genuine issue of material
fact with respect to his conspiracy claim to withstand summary
judgment.  The claim should, therefore, be dismissed.

**VI.**      **Retaliation**

Construed liberally, Moore's complaint alleges, not only a
conspiracy claim, but also a separate retaliation claim against
the Defendants.  It is well-settled that prison officials may not
retaliate against inmates for exercising their constitutional
rights.  *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995);
*Franco v. Kelly*, 854 F.2d 584, 588-89 (2d Cir. 1988).  An
inmate's right to seek redress of his grievances is guaranteed by

30

the First and Fourteenth Amendments.  *See Kelly*, 854 F.2d at 589.
To establish a claim of retaliation under § 1983, a plaintiff
must prove that: (1) his actions were protected by the
Constitution or federal law; and (2) the defendant's conduct of
which he complains was in response to that protected activity.
*See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000).
Because retaliation claims can be fabricated easily, plaintiffs
bear a somewhat heightened burden of proof, and summary judgment
can be granted if the claim appears insubstantial." *Shabazz v.
Pico*, 994 F.Supp. 460, 467 (S.D.N.Y. 1998)(internal quotation
marks and citations omitted).

Here, Moore satisfies the first prong of the retaliation
claim because the filing of grievances is constitutionally
protected conduct.  In order to prevail on the second prong,
however, Moore must show that the protected conduct was "a
substantial or motivating factor in the prison officials'
decision to discipline [him]." *Graham v. Henderson*, 89 F.3d 75,
79 (2d Cir. 1996).  "Evidence that can lead to an inference of
improper motive includes: (1) the temporal proximity of the
filing of a grievance and the alleged retaliatory act; (2) the
inmate's prior good disciplinary record; (3) vindication at a
hearing on the matter; and (4) statements by the defendant
regarding his motive for disciplining plaintiff." *Walker v.
Keyser*, No. 98 Civ. 5217, 2001 WL 1160588, at *6 (S.D.N.Y. Oct.

31

17, 2001).

Moore's response to the Defendants' motion fails to satisfy the second prong of the retaliation claim.  Other than his conclusory allegations, Moore offers nothing to show that the decision to institute disciplinary proceedings against him was substantially motivated by his prior grievances.  The nearly one year time lapse between the filing of his grievances in July 2003 and the filing of the misbehavior report in May 2004 does not support a finding that the misbehavior report was in response to Moore's grievances.  Moreover, Moore was found guilty of the assault charge contained in the report.  Finally, Moore does not point to his prior good disciplinary record or a statement from any of the Defendants indicating the motive for disciplining him. In the absence of such evidence, Moore's unsupported retaliation claim should be dismissed.

**CONCLUSION**

For the foregoing reasons, it is respectfully recommended that your Honor grant the Defendants' motion and dismiss Moore's complaint in its entirety.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (*see* Rule

6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States Courthouse, 300 Quarropas Street, Room 633, White Plains New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

   Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Robinson. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), cert. denied 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15,16 (2d Cir. 1989) (*per curiam*); *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Robinson and should not be made to the undersigned.

Date: May 23, 2007
White Plains, New York

                    Respectfully submitted,

                    MARK D. FOX
                    UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing report and recommendation have been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.

Mr. Allen Moore
# 82A4046
Gouverneur Correctional Facility
P.O. Box 480
Gouverneur, New York   13642

Mr. Jeb Harben, Esq.
Office of the Attorney General of the State of New York
120 Broadway
New York, New York 10271